## WOVEN-WIRE MATTRESS CO. *v.* WIRE-WEB BED CO.

*(Circuit Court, D. Connecticut. June 6, 1881.)*

1. RE-ISSUE No. 7,704—BEDSTEAD FRAMES—CONSTRUCTION—INFRINGEMENT.

Re-issued letters patent No. 7,704, granted May 29, 1877, to Woven-Wire Mattress Company, for improvement in bedstead frames, *limited* as to its *first* claim to the language of the first claim of the original patent, *sustained* as to its *third* claim, and *held infringed* as to such claims.

2. RE-ISSUE—OBJECT.

It is competent for a patentee to restate his invention in a re-issue so as to point out and claim a characteristic feature which is not clearly stated in the original patent.

3. ANTICIPATION—EVIDENCE—PRESUMPTION ATTACHING TO A PATENT.

Evidence of anticipation, to overcome the presumption attaching to a patent, must be clear and sufficient. The unsupported oral testimony of a patentee that he made a number of devices, containing a certain alleged anticipatory element, long prior to the controversy, but which was not shown in his application for a patent for said device, and without producing a device containing such element, is not such evidence as would overcome the presumption which belongs to a patent.

In Equity.

*Charles E. Perkins,* for plaintiff.

*Benjamin F. Thurston,* for defendant.

SHIPMAN, D. J. This is a bill in equity founded upon the alleged infringement of re-issued letters patent, issued May 29, 1877, to the plaintiff, as assignee of John M. Farnham, for an improvement in bedstead frames. The original patent was issued November 30, 1869, also to the plaintiff as assignee.

The first question in the case relates to the validity of the re-issue, or to the construction of its claims; for if the re-issue is not invalid, and if a literal construction is given to its claims without reference to the original patent, infringement of the first claim cannot be denied. The invention relates to a bedstead frame upon which is to be extended a flexible or elastic sheet or fabric for the support of the bedding. In the specification of the original patent the patentee said:

"The invention consists in the use of slotted or double-inclined end pieces, in which the ends of the fabric are clamped, and in the employment of longitudinal adjustable standards, to which the said end pieces are secured."

The claims were as follows:

"(1) The inclined double end-bars, C, of a bedstead frame, arranged substantially as and for the purpose herein shown and described. (2) The standards, B, arranged longitudinally, adjustable on the side-bars of a bedstead frame, to permit the inclined end-bars to be set at suitable distance apart, as set forth."

The re-issue says:

"My invention consists in the combination of the side-bars and end-bars, with the end-bars elevated above the side-bars in such a manner that the elastic fabric, stretched from end-bar to end-bar, can extend the entire width of the frame over the side-bars, and an elastic fabric attached to the end-bars only of the frame; and it also consists in the combination of the side-bars and end-bars of the frame, connected together by standards or corner-irons, B. By this arrangement the fabric is securely held."

There are four claims in the re-issue, the first and second being as follows:

"(1) The combination of the side-bars and end-bars and elastic coiled-wire fabric, D, attached only to the end-bars, with the end-bars of the frame elevated above the side-bars, so that the fabric will be suspended above the side-bars from end to end of the frame. (2) The combination in a removable bed-bottom or bedstead frame of the side-bars, A, standards or corner-pieces, B, end-bars, C, and the elastic fabric, D, combined and arranged substantially as and for the purposes specified."

The third and fourth claims are substantially identical with the two claims of the original patent. It was competent for the patentee to restate the invention in a re-issue, so as to point out and claim a characteristic feature which was not clearly stated in the original, viz., the combination of side-bars and inclined end-bars, and elastic fabric attached only to the end-bars, the end-bars being elevated above the side-bars, so that the fabric will be stretched from end-bar to end-bar above the side-bars. But an important question is whether it was permissible in the re-issue to abandon the inclined feature of the end-bars. The plaintiff insists that although the original imperfect patent has been enlarged in the re-issue, the latter is not properly open to criticism, because it is the right of the patentee, if through palpable mistake or ignorance of the principles of his invention the patent has been cramped within too narrow bounds, to have such mistake corrected, and to have the real principles and character of the invention stated in the re-issue.

The defendant insists that upon a comparison of the two patents, either with or without a knowledge of the state of the art, the change manifestly introduces new matter; for the inclined end-bar is no longer one of the two features of the invention, but any end-bar is included which is sufficiently elevated above the side-bars to meet the liberal requirements of the first claim. The defendant also says that the validity of the re-issue is not of especial importance, because, if valid, the end-bars must, in view of the state of the art, necessarily

be construed to mean the inclined end-bars of the original patent and of the drawings.

The last point requires an examination into the state of the art at the date of Farnham's invention, in order to see what the invention was, and whether the first claim of the re-issue must necessarily be limited to an end-bar of the specific form which was described in the original patent. Such examination shows that the public already had the combination of the first claim of the re-issue, if the claim is to be literally construed. The five Pohl iron bedstead frames made in Baltimore in 1865 had that general combination. While the oral testimony of the maker, unsupported by the presence of the frames, is insufficient to satisfy me in regard to the existence of minor, and, at the time, comparatively unimportant, details of construction, it is sufficient to satisfy me in regard to the general plan of the frame, especially as it is inherently probable that such a construction would be made by a person seeking to stretch an elastic fabric upon the rails of a frame. The Campbell wooden bunk bottom, upon which Judge Blodgett relied in the recent and unreported case of *Whittelsey* v. *Ames,* was a rude frame supporting a canvas sheet, the whole structure having similar general characteristics to those of the Pohl bedstead. These examples are sufficient to show that the first claim of the re-issue must be limited so as to compel the end rails to be the inclined rails of the original and of the third claim.

But little was said upon the trial in regard to the second claim. It, however, seems to me to be plain that the standard, B, is the longitudinally-adjustable standard, B, as described in both original and re-issue. The defendant's standards are not slotted, and the second and fourth claims are not infringed.

The remaining questions are as to novelty and infringement of the first claim as herein construed, and of the third claim. These claims are said to have been anticipated by the Pohl iron frames. The maker testified that he made in Baltimore, in 1865, five iron frames, in which the end-bars or bows, as he styles them, were from five-eighths of an inch to one and one-fourth inches square, and were inclined towards the bed bottom, making an inclination of about three-sixteenths of an inch. None of the bed bottoms are produced. They probably cannot now be found. The testimony of Mr. Pohl stands alone. His application for a patent does not describe the frames. This evidence is the unsupported oral testimony of a person in regard to a minor detail of the way in which a few frames

were made 15 years ago.    It is insufficient to overcome the presumptions which belong to the patent.

The question of infringement remains.    The defendant, by various witnesses, testifies that it was the intention of the officers of the company not to incline the end-rails, and that their frames were constructed with care and painstaking, so that they should not incline; and that if any inclination subsequently took place, it was owing to the shrinking or to the warping of the rails.    Upon this hearing, testimony has been given upon this point in addition to that which was introduced upon the hearing of the motion for preliminary injunction, and I am impressed with the manner in which the witnesses state this part of the case.    The end-rails of the frame, which were shown by the plaintiff on both hearings, manifestly incline, so that the under side of the fabric does not rest upon the end-bars.    This inclination existed when the exhibit was purchased at the furniture store, and it was not claimed upon the hearing of the motion that this was not a fair sample of the defendant's frames.    An examination shows that these rails incline because they do not fill the iron chair or standard.    The defendant has satisfied me that it was not the intention of the general manager of the company to construct the rails so that the rails should thereafter incline.    I have been in doubt about this part of the case, but my conclusion is that there has been infringement.    That is proved by Exhibit 1.    The extent of the infringement is to be ascertained by the master.

Let there be a decree against infringement of the first claim as construed, and of the third claim, and for an accounting.    Question in regard to costs to be reserved until coming in of the master's report.